## Nicholas, Executrix, et al. v. Fante.

(Decided December 3, 1914.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

Married Women—Contract of.—Where a married woman and her husband executed a contract agreeing to pay a contractor a stipulated sum for building a house on land owned by the husband, a part of the consideration to be paid by the conveyance of a lot of ground owned by the married woman, she was a principal in

the contract, at least to the extent of the value of the lot, and this being so, it was not error to give a personal judgment against her for a sum less than its value.

C. B. SEYMOUR and HUMPHREY MARSHALL for appellants.

WM. KRIEGER and PAUL B. COLLINS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Theresa Nicholas and her husband, Pete Nicholas, desiring to build a house on a lot owned by the husband, entered into a contract with Fante to do the work. The contract read: "We hereby give to the carpenter contractor, Joseph Fante, the contract of building a house located on Western Parkway, according to plans and specifications, for the sum of fourteen hundred dollars cash and our vacant lot, 30x180 feet, next to our house, 2744 West Main street. This lot must be free of encumbrance and mortgage." The lot mentioned in this contract was owned by Mrs. Nicholas.

During the progress of the work on the house, Pete Nicholas died, and his widow, Mrs. Nicholas, qualified as his executrix.

After the contractor had completed the work, he brought this suit against Mrs. Nicholas individually and as executrix of her husband to recover $245 alleged to be due on the contract price of $1,400, and also asked that Mrs. Nicholas be required to convey to him the lot mentioned in the contract.

For answer to this suit, Mrs. Nicholas, in her own right and as executrix, filed an answer and counter-claim, in which, after putting in issue the averments of the petition, she sought to recover damages on her counter-claim on account of the failure of Fante to complete the house according to contract.

There was dispute between the parties as to a number of items in the account of the contractor and also as to the value of extra work done by him, as well as the value of the lot mentioned in the contract.

In stating the accounts between the parties, the chancellor credited the contractor by the contract price of $1,400, by $1,000, which he found to be the value of the lot, by the value of extras admitted, $190, and by other extras amounting to $30, and charged him with a number of credits, including an item of $545, the amount of damage he found Mrs. Nicholas had sustained on account

of the defective construction of the house, leaving a balance due the contractor of $205.68, for which amount judgment went against Mrs. Nicholas, individually and as executrix.

On this appeal it is contended, among other things, that, in place of there being a judgment in favor of Fante, there should have been a judgment against him in favor of Mrs. Nicholas for $436.51.

There are several small items about which there was much conflict in the evidence, but we do not think it necessary to extend this opinion in discussing them, as we think the chancellor's finding of fact upon these small disputed items is sustained by the evidence.

The principal matters relied on for reversal are, that it was error (1) to give a personal judgment against Mrs. Nicholas, or a judgment against her individually and as executrix, and further error (2) to fix the value of the lot at one thousand dollars, (3) and to allow only $545 as damages for defective construction.

We think a personal judgment against Mrs. Nicholas was proper. She was as much a principal in this contract as her husband. She agreed, as a part of the contract, to give to the contractor a lot owned by her, thus showing, as we think, that she was not merely the surety of her husband, but beneficially and personally interested in the execution of the contract. She had a right in her own name to make a contract and to bind her estate by contract. The amount of the judgment against her is a great deal less than the admitted value of the lot that she agreed to put in as a payment on the construction of the house. The judgment did not undertake to divest Mrs. Nicholas of her title to the lot or encumber it with any lien for the amount of the judgment, but left her the undisturbed owner of it, and this being so, we do not think, looking at the matter from any standpoint, that she is in a position to complain of the personal judgment against her.

So far as concerns the ground that it was error to give judgment against her as executrix, except to be levied on assets in her hands, this is likewise an immaterial error, because, being herself personally bound for the judgment, it is a matter of no moment to her how the judgment runs against her as executrix, as she will be obliged to pay it as an individual. If she satisfies the judgment and it should be proper that the estate of her husband should contribute to the payment of the judg-

ment, this is a matter open to be adjusted between Mrs. Nicholas and the estate of her husband.

It will be observed that the chancellor, in finding the amount due the contractor, fixed the value of the lot he was to get at one thousand dollars. Counsel for Mrs. Nicholas complain of this and say that this lot should have been valued at only $750. Of course, if this were true, it would reduce by $250 the amount to which the contractor was entitled under his contract for the construction of the house.

Mrs. Nicholas, in her deposition said, in speaking of the value of the lot, that "Mr. Fante says, 'How much do you want for your lot?' I said, 'I will let it go for what it cost me without taxes, one thousand dollars.' He said, 'I will take the lot and give me the building and let me build this winter.' "

From this it will be seen that the chancellor, in fixing the value of the lot at one thousand dollars, merely adopted the unchallenged valuation put on it by Mrs. Nicholas. In doing this it seems evident that no error was committed.

The issue that has given us the most trouble is that concerning the amount allowed Mrs. Nicholas on account of the defective construction of the house. That the house was not built according to contract is really not disputed by the contractor. Several witnesses testified as to the difference between the value of the house in its present condition and its value if it had been built according to contract, and some of these witnesses estimated the difference to be as much as one thousand dollars, perhaps more.

Albert Hammond, who, it appears, was employed to do some carpenter work about the premises, said that "Any one knowing the condition of the house, would not give by one thousand dollars what it was worth. So far as that goes, it will never be in good shape. It was not properly constructed."

Charles W. Coogle, who did some brick and concrete work on the house, was asked: "Q. How much less valuable is the house now than it would have been if properly built? A. Now that is something that would be just a random guess with me. Q. Don't guess then. A. I only noticed the brick work and the concrete work. Q. Don't guess about it."

Pinkney Varble, a real estate agent, said that, from his knowledge of the condition of the house, it was worth

about eight hundred dollars less than it would have been if properly constructed.

Dr. J. W. Paul said that if he was going to buy the house, he would consider that it was worth a thousand dollars less than if it had been well constructed.

Humphrey Marshall, a lawyer, called on to assess the damage, said that he would not give by a thousand dollars as much for the house as he would have given for it if it had been properly constructed.

August Hollenberg, an architect, who was employed by Mrs. Nicholas to inspect the house and superintend its construction and reconstruction, said, in his examination-in-chief, that "it would take one thousand dollars to take that house and put it in any kind of shape at all." When asked, on his cross-examination, to give an itemized statement of the damage, his answer was: "As far as an itemized statement goes, it was about $126 in flooring, $60 in walls, $150 outside walls, $109 in plastering, and that is a very uncertain amount; that might go to $200; $100 for revarnishing and refitting openings. There you have got $545, with the very variable item of plastering, and if it ain't worth $500 at the minimum to have such a thing happen, I would not want a cent."

When the chancellor came to fix the damages he adopted the measure testified to by the architect Hollenberg in his itemized statement, and, we think, after reading the record, that this itemized statement of Hollenberg is the most satisfactory evidence in the case as to the amount of damages, and, accordingly, we are disposed to leave the figures as found by the chancellor.

We find also in brief of counsel for Mrs. Nicholas a claim that she sustained damage in loss of rents by the delay in the construction of the house, but we do not understand, from the pleading, that she asserted any claim for damages based on loss of rents. Aside from this, the contract does not specify the time in which the house should be built, and, under the circumstances, we do not think Mrs. Nicholas is entitled to any damages on this account.

Upon the whole case, we think the judgment of the chancellor was correct, and it is affirmed.